## No. 10,761.

### SUCCESSION OF JAMES REGAN.

A stipulation made between a mortgage creditor and an executor and his counsel, to the effect that the creditor will not foreclose his mortgage, but will permit the sale of the mortgaged property by the executor upon terms of credit, in order that it may realize a larger price, provided the executor and his counsel will not charge commissions or counsel fees upon the proceeds, will be enforced, if said contract is plain and unambiguous, and free from suggestion of fraud or error.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

---

*W. S. Benedict* for the Executor and Tutor, Appellee:

---

*Harry H. Hall* for the Opponent and Appellant:

---

The opinion of the court was delivered by

McENERY, J. The dative executor of this succession, by the advice of a family meeting and under an order of court, sold all the property of the succession to pay the debts of the same. D. C. McCan, who, for borrowed money, held a special mortgage on a piece of real estate, concurred in the recommendations of a family meeting, to sell the property on terms of credit.

The sale was made in this manner in pursuance of an agreement between the attorney of the executor and the mortgage creditor, McCan. The agreement between the attorney and the creditor, McCan, was, in substance, that the property on which McCan held a special mortgage should not contribute to the payment of the privileged costs of succession beyond $250, exclusive of the cost of selling the property.

The executor filed a final account and proposed a distribution of the proceeds.

McCan filed an opposition to the account, generally opposing it, and specially insisting upon the enforcement of the agreement with the attorney of the executor.

McCan's debt was not privileged. The nature of his debt gave him no vendor's or other privilege. It was an ordinary debt secured by special mortgage on specific property. It was therefore subject to the general privileges, such as funeral charges, law charges, expenses of last sickness, and the widow's and minors' claim for $1000, when in necessitous circumstances, and taxes and insurance on the property. The executor or his attorney and the creditor could not therefore make any agreement that would relieve this property from the succession charges which the law imposes upon it.

But there is no limitation upon the agreement that the executor or attorney or any other creditor holding a special or general privilege may make so far as it relates to his debt. He may, of course, renounce it.

In the instant case the attorney and the executor both agreed, in the interest of the succession, that their fees and commissions should not exceed the sum of $250. Their fees and commissions were thus reduced in order to induce the mortgage creditor, McCan, to consent to the speedy sale of the property.

There is no dispute as to the effect of the agreement so far as the attorney is concerned. But it is urged that he could not, without his consent, thus remit the commission of the executor. The executor was a party to all the succession proceedings. He was necessarily in court and a party to all of them.

In the motion, which was evidently made by consent, to discontinue the application of McCan to administer the succession of Regan, it stated that the motion is made " with the understanding that the mortgage of mover is to be paid in full from the proceeds

of sale of the Baronne street property, and that said mortgage creditor is not to be made to pay the cost of this succession nor to the executor's commission or attorney's fees."

The agreement with reference to the renunciation of the executor's commission and the attorney's fees is legal and binding.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to strike therefrom the amount of $750 allowed the executor as commissions, and the same to be charged to the executor, to be paid out first, on account of the privileged debts of the succession and the homestead of the minor children; and if these have been paid, then to the mortgage creditor, McCan. In other respects the judgment is affirmed.

## ON APPLICATION FOR REHEARING.

BREAUX, J. In his brief for a rehearing, the counsel for the opponent, D. C. McCan, states that, while it is true that the only points of serious discussion were the items upon the account of the executor's "commissions and attorney's fee" (both, by our opinion, stricken from the account), and that, although it would seem that the issues of the cause had been fully passed upon, in reality they were not.

That many other disputed items, proven not debts of the succession, if not specially passed upon, will presumably stand.

We have taken up and examined the items of the account *seriatim*. The following is the result of our examination:

It is admitted that the executor correctly debits himself with collections and proceeds of sale.

On the credit side of the account, the first item is the "sheriff's cost to effect sale," $477.85.

The opponent contends it should be $338.85.

The deputy in charge of the sales' department testifies that it is a correct account, and there is no evidence to the contrary.

With reference to the taxes for 1880, the officer testifies that they were paid, and this seems to be borne out by the certificate in evidence.

From which it will appear that the amount credited on the account is $1791.65; amount due the city for taxes, $1523.88.

The Crescent Insurance Company's account, $15.25, it is contended was for insurance on other property than that on which the oppo-

nent had a mortgage, and that the amount paid by Home Insurance Company for 1888 was paid by McCan.

We have made a statement of these claims without intending to prejudice the rights of the opponents, or of the succession.

They are not satisfactorily proven and they are dismissed as in case of non-suit.

It is ordered that our decree be amended by dismissing from the account of administration the item for taxes for 1880, and the item for insurance in the Crescent Insurance Company and that for the Home Insurance Company for 1888, and that, as thus amended, the original decree remain undisturbed.